## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DEAUNGELO SAVAGE                                    *

      Plaintiff,

                                 Case No. 8:17-cv-o2392 PWG

      vs.                                             *

SHAWN CATHCART, et al., Shawn Cathcart, et al.

      Defendants.                                     *


### JOINT PROPOSED PRETRIAL ORDER

Come now all parties, by and through their undersigned counsel, and file this Joint Proposed Pretrial Order pursuant to Local Rule 106:

### A. Plaintiff's Brief Statement of Facts

On or about 7 July 2014, the defendant Cathcart, acting as a deputy sheriff for St. Mary's County, Maryland, responded to a call for an open door, at 21680 N. Essex Drive, Lexington Park, MD 20653, the residence of the plaintiff.    The defendant Cathcart and his canine, "K9 168", encountered the plaintiff, who was asleep next to the window on the second floor, at the top of the stairs, as the air conditioning had broken down. The defendant Cathcart had a gun in one hand and the leash to his canine in the other. He dropped the leash, in order to grab his handcuffs. The canine attacked the plaintiff. The defendant Cathcart then got on top of the canine, and pushed the canine's head and jaws towards the plaintiff's face and neck. Cathcart allowed the aforesaid canine to apprehend and bite the plaintiff in the face and neck.

Plaintiff first visited MedStar St. Mary's County, while in custody, on the date of his arrest, and was examined in the emergency room. He received no treatment at that hospital, which released him after less than an hour.

Plaintiff was taken to the St. Mary's County Detention Center, where he was released the same day. He did not visit the medical unit there. A few days later, he was arrested on an alleged violation of probation, and spent six months in the Charles County detention center. He received no medical treatment there. However, once a week, he received counseling from a mental health practitioner at Charles County. After his release from the detention center, He visited a Charles County Health Department therapist on almost a weekly basis for almost two years.

### B. Defendants' Brief Statement of Facts

Brief Statement of Facts Defendant Proposes to Prove and Listing of Legal Theories Supporting Any Affirmative Defenses.

On July 7, 2014, Deputy Cathcart responded to 21680 North Essex Drive, Lexington Park, Maryland for a reported burglary in progress. While en route to the residence, Deputy Cathcart radioed the units on the scene to establish a perimeter around  the residence and stand by until he arrived. Deputy Cathcart looked the suspect up on his in-car computer and saw that he had a history of violation of protective orders, including Jasmine Kelly. When he arrived on the scene, Deputy Cathcart interviewed Jasmine Kelly, who was at the scene. She reported that when she came home, she saw her front door open and her ex-boyfriend, Deaungelo Savage, inside the residence acting strangely.

Kelly told Deputy Cathcart that he has never lived at that address, that he had no property in the residence, or any reason to believe that he lived there or could come inside. Kelly advised that  the police had responded to the address the day before and arrested Savage for burglary. Kelly advised that Savage was possibly under the influence of synthetic marijuana. Kelly also advised that there were no animals in the residence and that no one else was supposed to be in the residence.

2

Deputy Cathcart walked around the residence to check for any signs of forced entry and to see if any avenues of escape were present. He saw that the front door was opened approximately four inches, and that a part of the inside door jam trim had been forced. He then retrieved his canine from his car and advised the perimeter units to hold their positions while the canine cleared the residence. Deputies Cathcart and Glenn Knott approached the residence. Deputy Cathcart opened the door and took up a position of covering the right side of the door. He gave his standard canine warnings, namely "Sheriff's Office canine, make yourself known or I will release the dog," "Sheriff's Office canine, make yourself known or I will release the dog and you will be bit," and "Last warning, Sheriff's Office canine, make yourself known or I will release the dog and you will be bit."

The canine was then placed in defensive barking and Deputy Cathcart could hear movement inside the residence. He quieted the canine and advised perimeter units of movement and a possible suspect. He gave two additional warnings of "Sheriff's Office canine, come out now or you will be bit," "Sheriff's Office canine, come out now or you will be bit." There was no response or further sounds from inside the residence. All commands were given in a clear loud voice. After over a minute without a response from inside the house, Deputy Cathcart sent the canine inside the residence to conduct a building search. The canine cleared the main level and went down the steps to the basement. Deputy Cathcart advised Deputy Knott to follow him inside and they cleared the main level. Deputy Cathcart stood at the top of the steps to the basement and listened to the canine search the basement. After a period of time with no indications from the canine, the dog was recalled to the main level, preparatory to clearing the upstairs. The canine went up the stairs and Deputies Cathcart and Knott took positions at the bottom of the stairs behind cover. After a period of time, they moved up the stairs after hearing movement that was not the canine. Deputy Cathcart came halfway up the stairs above the landing. The canine came out of the bathroom and the bedroom on the left. The canine started to come down the stairs. To protect Deputy Knott from the canine, Deputy Cathcart stepped across the stairs and grabbed the canine by the handle on his collar.

At that point, Deputy Cathcart saw an individual sitting in the doorway of a bedroom to the right, at approximately the 2:00 position. Deputy Cathcart took up a tactical position of cover behind the wall on the stairs but could still see the suspect's upper body.

The suspect was slouched down with his hands behind his back and staring at Deputy Cathcart with a blank look on his face and not blinking his eyes or making any other movement. Deputy Cathcart gave additional canine warnings in a loud clear voice, stating "Sheriff's Office canine, let me see your hands or you're going to get bit," Sheriff's Office canine, let me see your hands or you're going to get bit," "You are under arrest, get on your stomach with hands out or you're going to get bit," and "let me see your hands or you're going to get bit." There was no response from the suspect and with no other options of safely apprehending the suspect, Deputy Cathcart released the canine to apprehend the suspect. The canine bit the suspect on the right side of his face in the area of his jaw. The suspect immediately turned over onto his stomach. Deputy Cathcart approached the suspect and removed the dog.  Deputy Knott moved to the suspect and handcuffed him.

Deputy Cathcart advised perimeter units to come upstairs to assist Deputy Knott, and he advised communications that the suspect was in custody and to have an ambulance respond to provide medical care to the suspect. Deputy Cathcart then returned his canine to his vehicle and advised headquarters of the apprehension and to contact his supervisor, Corporal Fleenor. Deputy Knott searched the suspect and found two pocket knives in his possession. He provided first aid to the suspect until the ambulance arrived.  Deputy Cathcart followed the ambulance from the residence to St. Mary's Hospital.  He took no further action. Deputy Rachael Roszell charged Plaintiff with 4th Degree burglary (Md. Code, Criminal Law Article, §6-205(1) ("A person may not break and enter the dwelling of another.")

Based on the above facts, Defendant neither falsely detained nor falsely arrested the Plaintiff. Defendant and his fellow officers were acting on the complaint of Jasmine L. Kelly, the Plaintiff's on and off again girlfriend, in investigating his allegedly unauthorized presence in the premises at issue. They had probable cause to believe that he was in Ms. Kelly's house without authorization. He failed to comply with and/or resisted their initial efforts to investigate him and as a consequence, he received superficial bites from Deputy Cathcart's canine partner. The detention/arrest and use of force were all justified. As a consequence, there was no violation of the Fourth Amendment or Articles 24/26 of the Maryland Declaration of Rights. Neither was there a common law battery. Defendant is in any event protected by statutory public official immunity with respect to the state law counts.

**C.   Brief Statement of Facts as to Counterclaims, Cross-Claims, or Third-Party Claims**

Not applicable.

**D.   Amendments Required of Pleadings**

a.   Plaintiff

None at this time.

b.   Defendants

None at this time.

**E.   Any Issue in the Pleadings that is to be Abandoned**

a.   Plaintiff

None at this time.

b.   Defendants

None at this time.

**F.  Requested Stipulations of Fact**

The parties stipulate that all documents exchanged during discovery and/or listed in this proposed Pretrial Order as potential exhibits are authentic and that testimony of a custodian of records of other sponsoring witness will not be necessary for their admission into evidence. However, all other objections, including those as to admissibility, are maintained.

**G.  Details of Damages Claimed or Relief Sought as of Pretrial Conference**

    <u>a.</u>  <u>Plaintiff</u>

Plaintiff claims $1,316.00 in bills from the Charles County Dept. Of Health. Plaintiff concedes he will not be able to present expert testimony concerning the No lost wage claim will be made. No claim for attorney's fees will be made.

    <u>b.</u>  <u>Defendants</u>

Defendants are not claiming any damages in this case.

Medical bills totaling $1,316.00 for mental health services were produced in discovery. Defendant objects to them in the absence of supporting expert testimony concerning both the bills and the treatment, including the basis and need for treatment

**Court's Ruling: For the reasons stated during the Pretrial Conference (PTC), in the absence of evidence from a witness qualified to testify as to the reasonableness and medical necessity of medical treatment, bills for such treatment are not admissible. *Desua v. Yokim*, 137 Md. App. 138 (Ct. of Sp. Appeals, MD 1999). Because the plaintiff is unable to call such a witness, the medical records will not be admitted into evidence at trial. Plaintiff may testify as to his injuries, and the impact they had on him in connection with his claims for non-economic damages. This is a definitive pretrial ruling on the record, Fed. R. Evid. 103(b).**

**H.  List of Documents or Exhibits**

    a.  <u>Plaintiff</u>

1. Hospital Records from Medstar

2. Medical records and bills from Charles County Health Department.

3. Plaintiff's pictures showing plaintiff

4. Any and all of the documents listed by the defendant.

5. Defendants' answers to interrogatories.

6. Defendants' answers to requests for production of documents.


**Court's  Ruling: The additional   records that Plaintiff disclosed prior to the PTC will be admitted into evidence, as there was no objection from the Defendant.  Fed. R. Evid. 103(b).**

b. Defendants

1.  July 7, 2014 St. Mary's County Sheriff's Office Arrest Report (Deputy Rachael Roszell)

2.  July 7, 2014 St. Mary's County Incident Report (Deputy Rachael Roszell)

3.  July 8, 2014 St. Mary's County Incident Report (Deputy Glenn Knott)

4.  July 7, 2014 Supplement Report (Corporal Todd L. Fleenor)

5.  July 7, 2014 St. Mary's County K-9 Use Report (Corporal Shawn Cathcart)

6.  July 7, 2014 Statement of Charges and Statement of Probable Cause (Deputy Rachael Roszell)

7.  Docket Entries for State v. Savage, Case No: 08-K-12-00421, Circuit Court for Charles County, relating to May 25, 2012 indictment for fourth degree burglary and second degree assault, subsequent guilty plea, and several violations of probation. (Impeachment and Damages)

8.  **Court Clarification Regarding 1-7 above: Authenticity of these records has been established, assuming the Defendant lays an appropriate foundation for the Public Record or Business Records exception, (Fed. R. Evid. 803(6) & 803(8)), they will be admitted as substantive evidence of the existence of probable cause. Fed. R. Evid. 103(b)**

9.  November 17, 2013 St. Mary's County Sheriff's Office Incident Report (violation of ex parte protective order as to Jasmine L. Kelly) (Impeachment and Damages)

10. November 21, 2013 Application for Statement of Charges and Statement of Charges (Violation of ex parte protective order as to Jasmine L. Kelly) **Court clarification: Counsel for the Defendant clarified that this record also is offered for impeachment and Damages.**

11. January 3, 2014 Arrest Warrant and January 20, 2014 Arrest Report (Violation of ex parte protective order as to Jasmine L. Kelly) (Impeachment and Damages)

12. January 20, 2014 Arrest Warrant and Arrest Report and January 21 Application for Statement of Charges and State of Charges (Violation of ex parte protective order as to

7

Jasmine L. Kelly) (Impeachment and Damages)

13.   Plaintiff's Answers to Interrogatories (Impeachment)

14.   MedStar St. Mary's Hospital Medical Records for Deaungelo Savage (Impeachment)

15.   Charles County Health Department Mental Health Center Records on Deaungelo Savage
      (Impeachment)

**Court Clarification: documents offered solely for impeachment and or damages are admissible
if , on cross examination, the Plaintiff denies the truth or accuracy of the  statements contained
in these documents, or is otherwise evasive or incomplete in answering questions about their
substance.   If the Plaintiff admits the information, the documents shall not be admitted.
Additionally, they may be used (but not admitted, unless by the Plaintiff) for purposes of
refreshed recollection, Fed. R. Evid. 612.  Fed. R. Evid. 103(b)**

7

## I.  Witnesses List

### a.  Plaintiff

1. Deaungelo Savage
2. Shaun Cathcart
3. Jasmine Kelly

### b.  Defendants

Defendant expects that he will call no expert witnesses, and will call the following fact witnesses:

A.  DFC Shawn Cathcart, c/o St. Mary's County Sheriff's Office.

B.  Deputy Glenn Knott, c/o St. Mary's County Sheriff's Office.

C.  Deputy Rachael Roszell, c/o St. Mary's County Sheriff's Office.

## D.  Deposition Portions to be Offered in Case in Chief

### a.  Plaintiff

None.

### b.  Defendants

Defendants reserve the right to use deposition testimony of Plaintiff or any other witness as substantive, impeachment or rebuttal evidence as necessary to comport with testimony presented at trial.

Deposition Excerpts for Unavailable Witnesses Under Rule 34(a)(4):  None.

**E. Other Pretrial Relief, Including Pending Motions**

     <u>a.</u>  <u>Plaintiff</u>

None.

     <u>b.</u>  <u>Defendants</u>

On February 9, 2020, Plaintiff's counsel advised defense counsel that he intends to call Jasmine Kelly, residing in Florida, as a witness. She was identified during the course of discovery as a Maryland resident. She was no longer living in Maryland at the time. Defense counsel has asked Plaintiff's counsel whether she is going to return to Maryland in time to be deposed before trial. If she is not, Defendant will object to her being called as a witness.

By telephone, Jasmin Kelly has advised Plaintiff's counsel  that she is willing to come to Maryland for a deposition in advance of the trial date.

Defendant also wishes to draw the Court's attention to an issue concerning punitive damages.  Here, the Plaintiff has asserted both federal and state claims. Under Maryland law, award of compensatory (not nominal) damages is a condition precedent to an award of punitive damages. Caldor, Inc. v. Bowden, 330 Md. 632, 661-2, 625 A.2d 959, 973 (1993); Montgomery Ward & Co. v. Keulmans, 275 Md. 441, 446, 340 A.2d 705, 708 (1975). The situation is less clear under federal law.  According to the Commentary in Sand & Sieffert, Modern Federal Jury Instructions 77-5, p. 77-28 (2019), and the cases cited there, an award of compensatory damages is generally required for some federal claims, such as cases involving the Fair Housing Act, see People Helpers Foundation, Inc. v. City of Richmond, Va., 12 F.3d 1321, 1326-27 (4th Cir. 1993) but not in Title VII and Section 1983 cases, although there is no unanimity. See the discussion in Louisiana ACORN Fair Housing v. LeBlanc, 211 F.3d 298, 302, 303 (5th Cir. 2000). If Plaintiff's state and federal claims, and claim for punitive damages, survive motions for judgment, the Court may be called upon to instruct the jury separately on punitive claims under federal law and punitive claims under state law.

**F. Other Matters**

Any Other Matters Added by the Court.
**Court clarification: although not raised
during the PTC, if Ms. Kelly is to testify,
Defendant will be allowed an opportunity
to depose her before her testimony on
direct examination. Counsel are to
coordinate this in advance of trial. If
possible, a Zoom or other remote
deposition is preferable. Fed. R. Evid.
103(b).**
None to the knowledge of the parties.


Please see attached proposed Voir Dire, Jury Instructions and Verdict Sheet.


Respectfully submitted,


_____/s/_____
George Harper
924 E. Baltimore St.
Baltimore, MD 21202
olacharper@aol.com
*Counsel for Plaintiff*


_____/s/_____
Daniel Karp, Esq.,
Suite 1850,
120 E Baltimore Street,
Baltimore, Maryland 21202

*Counsel for Defendants*

**Approved as modified above:**

4/19/2021

**Paul W. Grimm, United States District Judge**